Evans, J.
This action seeks a perpetual injunction against the members of the Industrial Commission of Ohio.
Plaintiff is an employer of labor subject to the provisions of the employer’s liability act of this state. In 1914 under the amendment of 1913 of Section 22 of said act (103 O. L., 79), said commission made its finding of facts and certificate to plaintiff, and plaintiff made his election to pay direct the compensation and benefits to injured employees and dependent beneficiaries as in the act provided, and has since and is continuing so to do. Under said act an employer of labor has the option either to pay into the state insurance fund, or to pay direct to his injured employees or to their dependent beneficiaries upon the necessary finding of facts, and certificate of the commission, and giving the bond, and performing all the other condition required by the act. Immediately following such election to pay direct instead of into said fund, the plaintiff contracted with the Aetna Life Insurance Company for indemnity insurance, and said company agreed to indemnify plaintiff against his liability for the payment of any such compensation, benefits and expenses as provided in said act and the amendments thereof.
Said contract of insurance contains no provision for lapse or forfeiture of the same, or of any of plaintiff’s rights thereunder for non-payment of any premiums due thereon. It is an indeterminable contract, other than that it provides that either party upon thirty days written notice to the other party may effect the cancellation of the policy of insurance.
Said insurance company was duly licensed to transact business in Ohio, and at the date of said contract authorized to indemnify employers against loss or damage for personal injuries as then provided in Section 9510, Code.
In 1917 said legislative act was amended. Said Section 22 now designated in the code as Section 1465-69 (107 O. L., 159), is so amended that in addition to the necessary facts and requirements provided in the amended act of 1913, the amendment of 1917 provides that such employers “who do not desire to in *515 sure the payment thereof or indemnify themselves against loss sustained by direct payment thereof, may upon a finding of such fact by the Industrial Commission of Ohio, elect to pay individually such compensation * * * to such injured employees or the dependents of such killed employees.”
Also, the original Section 54, being Code Sections 1465-101, was amended in 1917 (107 O. L., 7), and provides that “all contracts and agreements shall be absolutely void and of no effect which undertake to indemnify or insure an employer against loss or liability for the payment of compensation to workmen for injury, or to their dependents for death * * * or which provide that the insurer shall pay such compensation, or which indemnify the employer against damages. * * * No license or authority to enter into any such agreements or issue any such policies of insurance shall be granted or issued by any public authority.’’
Also, by the amendment of Section 9607-2 Code (107 O. L., 647), said act now provides for the exclusion of workmen’s compensation in liability insurance.
The petition alleges that the Industrial Commission has passed a resolution to the effect that no such employers shall be permitted to pay direct to injured employees or their dependents compensation or benefits under said act, if such employers contract for the insurance of payment to themselves of such compensation and benefits, or shall indemnify themselves against loss sustained by the direct payment thereof, and that the commission is threatening to give notice of the passage of such resolution, and to revoke all authorizations or findings of facts heretofore issued by the commission permitting such employer to pay direct if they contract to indemnify themselves against such loss.
The plaintiff alleges that its said contract of insurance is a valid, subsisting contract, and that he has the right to continue said contract until the same be canceled as therein provided by one of the parties thereto; that he has the right to cancel said contract, and make contracts of insurance with others to indemnify him against such loss or liability.
*516 Tie avers that the legislative act of 1917, amending Sections 1461-101, and 1465-69, were not intended to and do not apply to contracts of insurance or indemnity existing when said acts took effect, or to such contracts with individuals, and were not intended to and do not authorize said commission to refuse, revoke or cancel authorizations of employers to pay direct such compensation and benefits upon finding by said commission that such employers desire to so insure.
And avers that if said acts and said resolution and notices were so intended to apply, then that such are unconstitutional and void, in that they contravene Article XIY, Section 1 and Article I, Section 10 of the Constitution of the United States, and Article I, Section 1, Article I, Section 19 and Article II, Section 28 of the Constitution of Ohio.
Plaintiff prays for a perpetual injunction to enjoin the members of said commission from sending out said notices, and from revoking said findings of facts, and from carrying out and effectuating said resolution.
Do said amended acts of 1917 apply to existing contracts for such indemnity insurance? If so, are said amended acts unconstitutional and void?
It is the contention of counsel on behalf of the demurrer to the petition that, by the amendments of 1917, to said act, insurance companies were prohibited from transacting the business of writing liability insurance to employers who had elected to carry their own insurance; that all such contracts then in existence were made void; that this action of the Legislature is a valid exercise of the police power; that by the amendment of said Section 22, if plaintiff elects to take advantage of the privileges offered therein he must comply with the conditions upon which such privileges are offered; that the character of the contracts pleaded by plaintiff are not existing indeterminate contracts, but run from year to year, and when an annual premium is paid, a new contract for another period is made; that the last premium paid wias made after said amendments, and that plaintiff is attempting knowingly to prolong an illegal contract when such payment is made.
*517 It is also claimed on behalf of the demurrer, that no vested rights have been impaired by said legislation, and that said amended act is supported by the organic law of the state, .and by the decided cases, and invalidates, all such existing contracts, and prohibits all such future contracts.
It is the contention of counsel for plaintiff that said amendments do not declare that the prohibition shall extend to existing contracts; that they refer in language to future contracts, not contracts already made"; that it requires strained effect in order to construe said sections to apply to existing contracts; that if the language is ambiguous they could only apply to future contracts, and can not have retrospective application, unless it is held that the Legislature has so explicitly expressed its intention.
Also, that said amendments of 1917 are unconstitutional as' to prohibiting employers making indemnity contracts; that the Legislature can not prohibit insurance, nor compel a sacrifice of indemnity insurance as a condition to the employer’s right to pay compensation directly; that the desire for indemnity insurance can not be made the sole basis of a legislative classification of employers, distinguishing them, as ineligible to pay compensation directly; that such classification is not related to the purpose of the constitutional amendment of the compensation law, and is arbitrary and said act is unreasonable, unconstitutional and void; that as the Legislature can not prohibit employers making insurance contract, it can not annul existing contract. In brief, the above are the leading claims of the respective parties on this demurrer.
The questions here presented, by reason of their importance, have been very fully and ably argued by counsel, and a great many authorities are cited.
I have examined all of them, but it will not be necessary in the opinion to review them, other than such as, in my opinion, control in determining the issues.
I think there is no doubt but that, under the authorities in this state, the subject-matter in said act and the amendments are such ,as to justify the conclusion that said act was passed in the exercise of the police power.
*518 Such was so expressly held by our Supreme Court in State, ex rel, v. Cramer, 85 O. S., 391, wherein the court say that it is clear that the objects and purposes which the Legislature contemplated in the passage of the law in question are sufficient to sustain the exercise of the police power, and the participation of the state in the manner provided. The court further say in that case that “in a general way the police power extends to all the great public needs. It may be put forth in~aid of what is sanctioned by usage, or held by the prevailing morality or strong and preponderant opinion to be greatly and immediately necessary to the public welfore.” Citing Canfield v. Z7. S., 167 U. S., 518.
It is not necessary to cite further authorities on this phase of the case, for I think it is clear, that said act was passed in the exercise of the police power.
Are said amendments intended to and do they effect existing contracts of insurance to such employers?
Since the adoption of Section 35 of the Constitution in 1912, and the legislative amendment of Section 1465-69 of 1913 (103 O. L., 79), said workmen’s compensation law has been compulsory. Since then all employers of labor in this state employing five or more workmen or operatives regularly in the same business or in or about the same establishment under any contract of hire, express or implied, are within the compulsory provisions of said .act
The .amendment of 1917 retains a classification of employers, in that by complying with the required provisions an employer may elect to pay into the state insurance fund the amount of premium determined and fixed by the Industrial Commission, or he may elect to pay individually such compensation to his injured employees and itheir beneficiaries directly, which shall in no event be less than that paid or furnished out of the state insurance fund, in similar cases to injured employees or to their dependents by such as contribute to said fund.
B,y Section 35 of the Constitution, laws may be passed establishing a state fund to be created by compulsory contributions thereto by employers, and administered by the state, determin *519 ing the terms and conditions upon which payments shall he made therefrom.
Under the above provision of the Constitution the Legislature had full power to repeal the provisions of such election, and to require all such employers of labor to pay such premiums into the state insurance fund, and to deny the right of election to pay direct to any such injured employees or their beneficiaries. The Legislature by the amendment of 1917, did not see proper so to do, but exercised the option to retain such election, with the addition of a material requirement on the part of any such employer as desired to elect to pay direct instead of paying into the state fund.
By the amendment of 1917 of Section 1465-69, it is provided that such employers * * * who do not desire to insure the payment thereof, or indemnify themselves against loss sustained by the direct payment thereof, may, upon a finding of such fact by the Industrial Commission of Ohio, elect to pay individually such compensation. By this provision an entirely new requirement is incorporated in said workmen’s compensation law.
The law further provides that said commission shall make and publish rules and regulations governing the mode and manner of making application, and the nature and extent of the proof required to justify such findings of fact by said commission as to permit such election by such employers. Also, that said commission may at any time change or modify its findings of fact therein provided. Said act does not in express terms provide that it shall apply to existing contracts of insurance. But the act does provide, as a condition for the right of election to pay direct, that employers shall not desire to insure the payment thereof or indemnify themselves against loss sustained by such direct payment. By the provisions of the act, before the commission wifi-be justified in making a finding of fact and a certificate to such an employer desiring to pay direct, the commission must find, in addition to the other conditions, that he must be such an employer of labor as does not desire to so insure. The act being now compulsory as to all such employers, they must either pay the compensation into the insurance fund, or they *520 must quality under the -statute to pay direct instead of paying into said fund. And by the provision of said amended section of the statute they can not so qualify unless they do not desire to so insure, nor could the commission make the necessary finding of fact and certificate in the absence of such desire not to so insure.
By a reasonable construction of said amended act, in connection with the other amendments above referred to, and of Section 35 of the Constitution, I am of the opinion that the legislative intent was that all such employers of .labor in this state shall upon the taking effect of said amendment, elect either to pay into the insurance fund, or elect to pay direct upon complying with all the conditions therein prescribed, including that of not desiring to so insure, and thereby intended the act to apply to any and all- such existing policies of insurance. This is because said provisions in the amendment would be rendered inoperative as to those who desire to pay direct if they could continue existing contracts of insurance.
The Supreme Court in Stale, ex rel, v. Employers Liability Assurance Corporation, 95 O. S., 289, decided in January, 1917, construed certain of the amendments of the act of 1913. The constitutionality of Section 54 (3465-101) as amended in 1913, was before the court in that case on a demurrer to the answer. It seems at that time the contracts of insurance contained agreements to indemnify employers for civil liability for injury to employees by the willful act of the employer or his agents, or for his. failure to observe any lawful requirement for the safety of employees. The court upheld the constitutionality of the act as it then provided, but entered a judgment of ouster as to the exercise of the franchise of writing indemnity insurance policies to employers other than those permitted by the court, and suspended the operation of ouster for one hundred days in order to permit respondent to conform to the holding.
The judgment in that case did affect existing contracts of insurance, so far as they, embodied insurance to indemnify- employers on account of injuries to employees by willful 'act of the employer or his agents, or such as were occasioned by the failure *521 of tbe employer or his agents to observe any lawful requirements for tbe safety of tbe employee, and required all such policies to be reformed to conform to tbe judgment. Tbe judgment was predicated upon tbe statute as it then provided. Tbe amendments of 1917, providing that all such indemnity contracts of insurance shall be absolutely void, and providing for tbe additional condition upon which an employer may elect to pay direct, and providing that liability insurance shall not include workmen’s compensation were not before tbe court in that case.
Tbe judgment of ouster in tbe above case may have had a controlling influence to account for tbe absence of an express provision in tbe amendment of 1917 for its application to existing contracts of insurance.
The petition alleges that plaintiff in January, 1914, made and entered into bis said contract of indemnity insurance with tbe said Aetna Insurance Company. This was after tbe original enactment of the said workmen’s compensation act, and was after tbe amendments of 1913 of said act, and was after said act and amendments were in effect and operation. In this connection, and in connection with tbe judgment that said act is within tbe police power, I am impressed with tbe observations of tbe United States Supreme Court in Railroad v. Mottley, 219 U. S., 467, wherein it held that under the interstate commerce act said existing contract was rendered invalid.
Tbe court say:
“The authorities support tbe view that, as tbe contract in question would have been illegal if made after tbe passage of the commerce act, it can not now be enforced against tbe railroad company even though valid when made. If that principle be not sound, tbe result would be that individuals and corporations could, -by contracts between themselves, in anticipation of. legislation, render of no avail the exercise by Congress to tbe full extent authorized by the Constitution of its power to regulate commerce. No power of Congress can thus be restricted.”
Tbe court further say:
"The agreement between tbe railroad company ,and tbe Mottleys must necessarily be regarded as having been made subject *522 to the possibility that, at some future time, Congress might so exert its whole constitutional power in regulating interstate commerce as to render that agreement unenforcible, or to impair its value. That the exercise of such power may be hampered or restricted by contract previously made between individuals or corporations is inconceivable. The framers of the Constitution never intended any such things to exist.”
The contract in question in that case was made several years before the passage of the interstate commerce act, ¡and was a valid act, and was fully performed up to the passage of said act. But because of the provision that after January 1st, 1917, no common carrier subject to the provisions of this act shall directly or indirectly issue or give any interstate free tickets, free pass, or free transportation for passengers, the railroad company refused longer to perform on said contract, and this gave rise to said action and the decision of the Supreme Court that said act invalidated said existing contract.
The Supreme Court of Ohm, in passing upon the constitutionality of Section 27 of said act, in 95 O. S., 248, say:
"The act was passed in the exercise of the police power, fortified by the grant of power contained in the amendment to the Constitution in question, which in itself is but an assertion of the police power. It is an effort in some degree to meet the requirements of new conditions which have come in an age full of revolutionary changes in industrial methods.”
Numerous decisions are cited from the United States Supreme Court, and from state courts wherein it is held as to such acts within the police power apply as well to existing as to future contracts. The great weight of the authorities, in my opinion, uphold that doctrine in eases such as this.
The plaintiff cites, among other cases, State, ex rel, v. Creamer, 85 O. S., 349, decided in 1912, involving the constitutionality of the original act to create a state insurance fund for the benefit of injured employees, in which the court said in the opinion that “as to the suggestion that this statute impairs the obligations of contracts, it is sufficient to say that it can, of course, not *523 affect contracts in existence and unexpired at the time it is put into operation by the employer.” Since then Section 35 of the Constitution has been adopted, the said amendments of 1917 have also been enacted, the effect and operation of which, in my opinion, do affect such existing contracts.
I am of the opinion that it is not necessary to comment further on the questions made, or to refer to the numerous decided eases cited. I have carefully examined all of them. Since the enactment of this and similar laws, the weight of the authorities uphold in the great majority of cases the validity of such legislation. The general holding is that as such contracts are made within the reasonable contemplation of such legislation and subsequent amendments thereto to conform to conditions effecting the desired purposes, that all such contracts as tend to the material impairment of the operation of such laws are subject thereto, and if existing at the time of such legislation must be changed or ended, if necessary, to enable a full and complete operation of the law.
The act in question is not retrospective in a case such as this, and does not fall within that objection. It falls within a class of cases in which such contracting parties should reasonably have contemplated, when so contracting, such legislation.
The act is not prohibitive of insurance other than such indemnity insurance, nor is it discriminating, nor can it be claimed to sacrifice insurance further than the requirement to conform to the law in that respect, and this is upheld by the weight of authorities.
The Cleveland Stamping & Tool Company has, since the argument, been made a party defendant, and has filed an answer and cross-petition, to which the other defendants herein have filed a demurrer. The answer does not take issue with the allegations of the petition,- and the cross-petition sets forth substantially the same claims that are set forth in the petition. Counsel for all the parties, including those for the cross-petitioner, have submitted the demurrer to the said answer and cross-petition on the argument and briefs made on the demurrer to the petition. The same questions of law are made and are involved in each.
*524 It is the contention of plaintiff that since the Legislature has repealed all regulations as to such indemnity insurance, that in the absence of laws requiring incorporation for the transaction of the business of insurance, that individuals are unrestrained in making insurance contracts with other individuals, and engaging in the business of insurance. This is because, as claimed, that the right to make insurance is an inalienable right protected by the Constitution; that the Legislature can not prohibit insurance, but may regulate it. It is the claim, in brief, that plaintiff, being an individual, can not be restrained by legislation from making indemnity insurance contracts.
I think it is not necessary to dwell at any length on this ques* tion. The Supreme Court has held in Renschler v. State, 90 O. S., 366, that an insurance contract by an individual is subject to regulation by the insurance department; that even if individuals, acting as natural persons, can carry on the business of insurance, and exercise the functions of such, they must comply with all the laws of Ohio on the subject of life insurance; that it may well be questioned whether a franchise of this character, which by its very nature presupposes perpetuity, could be granted to an individual.
Other authorities cited are also of similar purport. I am of the opinion that all such parties to contracts of indemnity, insurance, whether individuals or corporations, are subject to the provisions of said act and its amendments, and that the act is not invalid for.the reason that it affects individuals in that regard. The demurrers of said defendants to the petition and to said answer and cross-petition are both sustained, and the restraining order heretofore issued is dissolved.